# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

TAMMI TERRY, as Administratrix for the Estate of David Terry, and TAMMI TERRY,

    Plaintiffs,

v.

MONSANTO COMPANY,

    Defendant.

Civil Action No. 7:19-CV-98 (HL)

## ORDER

Plaintiffs David Terry[1] and Tammi Terry allege that David Terry developed renal cell carcinoma following exposure to Defendant Monsanto Company's Roundup®-brand herbicides. Before the Court is Defendant's Motion for Partial Summary Judgment. (Doc. 38). Defendant argues that Plaintiffs' failure to warn claim fails as a matter of law because Plaintiffs have not established that Plaintiff David Terry read the warning labels on Defendant's products before using them. Defendant further contends that Plaintiffs lack standing to pursue a claim for breach of implied warranty of merchantability. After carefully reviewing the pleadings, briefs, and other evidentiary materials presented, the Court finds no

---

[1] David Terry passed away on May 12, 2021. (Doc. 60). On August 26, 2021, the Court granted Plaintiffs' Motion to Substitute a Necessary Party (Doc. 65) and substituted Tammi Terri, as Administratrix for the Estate of David Terry, for David Terry. (Doc. 65).

genuine issues of material fact exist as to any claim and hereby **GRANTS** Defendant's Motion for Summary Judgment.

I.     BACKGROUND

Plaintiff David Terry spent most of his career working on farms. He was employed by Sumner Turf Farms from 1995 to 2006; Valdosta Plant Company from 2013 to 2016; and Dark Horse Farms from 2017 to 2018. (DSOMF ¶ 1).[2] Mr. Terry's job responsibilities included applying Roundup® products to target weed growth on the farms. (Id. at ¶¶ 1-2). Roundup® products are broad-spectrum herbicides containing the active ingredient glyphosate. (Id. at ¶ 2).

Mr. Terry first used Roundup® products while employed by Sumner Turf Farms. (David Terry Dep., Vol. I, p. 81). He did not read the warning label before using the products. (Id. at p. 89). Prior to applying Roundup®, Mr. Terry diluted the product with water and mixed it in the tank of a tractor at the farm's "filling" or "mixing" station. (DSOMF ¶ 3). He then sprayed the product while driving a "highboy" tractor with an attached tank and spraying apparatus. (Id. at ¶ 4). During application of the herbicide, Mr. Terry generally wore blue jeans, leather boots, either a short or long-sleeved shirt, rubber gloves, a hat, and sometimes a mask. (David Terry Dep., Vol. I, p. 86).

---

[2] "DSOMF" refers to Defendant's Statement of Undisputed Material Facts (Doc. 38-2). The paragraphs cited are those admitted by Plaintiffs.

Mr. Terry never personally purchased Roundup® products. (DSOMF ¶ 7). At Sumner Turf Farms, Ronnie Sumner purchased the products. (David Terry Dep., Vol. I, p. 83). At Valdosta Plant Company, Tom Daughtrey purchased the Roundup® products used at the farm. (Id. at p. 125). At Dark Horse Farms, Ronnie Sumner purchased the products. (Id. at p. 158). In his affidavit, Mr. Terry notes that he became a Licensed Certified Pesticide Applicator approximately twenty years ago. (Terry Aff., ¶ 4). An Applicator License number is legally required to purchase commercial quantities of Roundup® products. (Id. at ¶ 8). Mr. Terry was the only Licensed Certified Pesticide Applicator employed by Sumner Turf Farms and Dark Horse Farms. (Id. at ¶ 9). Accordingly, when Ronnie Sumner placed orders for Roundup® products he did so using Mr. Terry's Applicator License number. (Id.).

Mr. Terry also applied Roundup® products at his home. (DSOMF ¶ 8). He did not purchase the Roundup® products he used at home. (Id.). Rather, he would "get a little bit" from work "and spray around the house. (David Terry Dep., Vol. I, p. 189).

Mr. Terry was diagnosed with renal cell carcinoma in September 2018. (DSOMF ¶ 10). After his cancer diagnosis, Mr. Terry continued using Roundup® products as late as May or June 2019. (Id. at ¶ 11). Mr. Terry passed away on May 12, 2021. (Doc. 60, p. 2).

## II.   SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). But, when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In reviewing a motion for summary judgment, the "court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 150 (2000) (citations omitted) "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. (internal quotation marks and citation omitted). The party seeking summary judgment

"always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and to present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. Summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. at 323.

### III.   ANALYSIS

#### A.   Failure to Warn

Plaintiffs seek to recover from Defendant under theories of strict liability and negligence, arguing, in part, that Defendant breached its duty to provide an adequate warning label on its product. Because this action is based on diversity of citizenship, substantive Georgia law applies. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). To succeed in a standard products liability case premised on a failure to warn, "Georgia law insists that a plaintiff show that the defendant had a duty to warn, that the defendant breached that duty, and that the breach

proximately caused the plaintiff's injury." Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010); see also Powell v. Harsco Corp., 209 Ga. App. 348, 350 (1993) ("Whether proceeding under a strict liability or negligence theory, 'proximate cause' is a necessary element of [the plaintiff's] case.").

Under Georgia law, the failure of a product user to read an allegedly deficient warning is a complete bar to a failure to warn claim. See Thornton v. E.I. DuPont Nemours & Co., Inc., 22 F.3d 284, 290 (11th Cir. 1994) (concluding that "any insufficiency in the warning label was not the proximate cause of [the plaintiff's] injuries" where the plaintiff "had the opportunity to read the label and failed to do so"); Cobb Heating & Air Conditioning Co., Inc. v. Hertron Chem. Co., 139 Ga. App. 803, 804 (1976) ("[A]ny insufficiency of the warning label of a product may not be the proximate cause of [an injury] when the user fails to read the label."); but see Rhodes v. Interstate Battery Sys. Of Am., 722 F.2d 1517, 1519 (11th Cir. 1984) (finding that there was a factual issue as to the adequacy of the manufacturer's communication of the dangers of a product where the plaintiff testified that that he could not see the dark letters embossed on the top of the product because there was insufficient lighting).

David Terry testified that prior to using Roundup® products, he did not read the warning labels. (David Terry Dep., Vol. I, p. 89). Defense counsel asked plainly, "Did you read the warning label on the Roundup products before you

6

used them?" (Id.). Mr. Terry succinctly responded, "No." (Id.). This question was posed as a part of a series of generic questions about the products Mr. Terry used during his employment, how Mr. Terry used those products, and what precautions he took while mixing and applying the products.

In his affidavit, Mr. Terry now attempts to qualify his response:

> While I did not read any label on Roundup products when I first began as a field hand, I have read and been well familiar with the labels on the Roundup products ever since I became a Certified Pesticide Applicator twenty years ago.

(Terry Aff., ¶ 7). Mr. Terry asserts that during his deposition, defense counsel asked only whether Mr. Terry read the warning labels *prior* to using Roundup® products. (Doc. 39-1, p. 5). However, Mr. Terry states that he was never asked whether he read the warning labels *after* he began using the products. (Id.).

Defendant argues, and the Court agrees, that the question posed to Mr. Terry at his deposition was clear. Defense counsel unambiguously asked Mr. Terry whether he read the warning labels before using the herbicide products. The question was plainly meant to elicit a response to whether Mr. Terry ever read the warnings before applying the Roundup® products. Mr. Terry answered simply, "No." (Terry Dep., Vol. I, p. 89).

Mr. Terry sat for his deposition on December 12, 2019. Defendant filed its motion for summary judgment on November 20, 2020, almost a year later. Only when Defendant raised the issue regarding the reading of the warning label in its

7

motion for summary judgment did Mr. Terry attempt to explain his deposition testimony. Defendant moves the Court to strike Mr. Terry's affidavit as a "sham affidavit." Under the sham affidavit rule

> [a]n affidavit may be stricken as a sham 'when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact . . . [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.'

Tippens v. Celotex Corp., 805 F.2d 949, 954 (11th Cir. 1986) (citations omitted). The rule "only operates in a limited manner to exclude unexplained discrepancies and inconsistencies, as opposed to those 'which create an issue of credibility or go to the weight of the evidence.'" Fucron v. Mail Ctrs. Plus, LLC, 843 F.3d 1295, 1307 (11th Cir. 2016) (quoting Tippens, 805 F.2d at 953-54).

Neither the question nor the answer here was ambiguous. Moreover, there is nothing in the record suggesting that Mr. Terry misunderstood the question posed, nor is there any indication that he was deprived of the opportunity to explain his response. The affidavit submitted with Mr. Terry's response to Defendant's motion for summary judgment can be seen as nothing more than an attempt to create an issue of material fact where none exists. The Court accordingly strikes those portions of Mr. Terry's affidavit that contradict his deposition testimony.

Mr. Terry clearly testified that he did not read the warning labels on the Roundup® products prior to applying the products. Absent evidence to the contrary, Plaintiffs' failure to warn claim fails as a matter of law. The Court therefore **GRANTS** Defendant's motion for summary judgment as to Plaintiffs' failure to warn claim.

### B.     Breach of Implied Warranty of Merchantability

Defendant next moves for summary judgment as to Plaintiffs' claim for breach of implied warranty of merchantability. Defendant argues that it is entitled to judgment as a matter of law because Plaintiffs lack standing to bring the claim having failed to establish that Mr. Terry had privity with Defendant.

Georgia law provides that a warranty of merchantability is implied in any sale of goods or contract for the sale of good. O.C.G.A. § 11-2-314. Where, as here, a warranty arises from a sale of goods, the warranty runs only to a buyer who is in privity of contract with the seller. See Chaffin v. Atlanta Coca-Cola Bottling Co., 127 Ga. App. 619 (1973). The Georgia Commercial Code defines a buyer as "a person who buys or contracts to buy goods" and a sale as "the passing of title from buyer to seller for a price." O.C.G.A. § 11-2-103; § 11-2-106(1). The protections of an implied warranty extend only to the buyer of the goods and to certain members of the buyer's household:

9

> A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume, or be affected by the goods and who is injured in person by breach of the warranty.

O.C.G.A. § 11-2-318. Accordingly, in order to recover under a theory of breach of implied warrants of merchantability, a plaintiff first must demonstrate privity with the seller. Keaton v. A.B.C. Drug Co., 266 Ga. 385, 386 (1996) (citing Cobb Cnty. Sch.Dist. v. MAT Factory, Inc., 215 Ga. App. 697, 702 (1994)).

Plaintiffs do not dispute that David Terry was not the direct purchaser of Defendant's products. (DSOMF, ¶¶ 7, 9; Doc. 39-4). Rather, Mr. Terry's employers purchased the product. (Id.). "Georgia courts have repeatedly held that privity does not extend to employees of the purchaser." Morgan v. Mar-Bel, Inc., 614 F. Supp. 438, 441 (N.D. Ga. 1985) (citing Beam v. Omark Indus., Inc., 143 Ga. App. 142, 146 (1977); Weaver v. Ralston Motor Hotel, Inc., 135 Ga. App. 536, 539 (1975)). Plaintiffs argues that because Mr. Terry's employer used his Applicator License number to make the purchase, Mr. Terry, in effect, was the purchaser of the products. (Terry Aff., ¶ 9). Plaintiffs point to no case law to support this position. Nor have Plaintiffs produced any evidence or case law to support their theory that Mr. Terry had some successive relationship to his employer to establish privity.

The undisputed evidence demonstrates that Mr. Terry's employers purchased the Roundup® products. Accordingly Mr. Terry lacks privity with Defendant and cannot maintain an action for breach of implied warranty of merchantability against Defendant. Defendant thus is entitled to summary judgment.

## IV.   CONCLUSION

For the reasons discussed herein, the Court **GRANTS** Defendant's Motion for Partial Summary Judgment (Doc. 38).

**SO ORDERED**, this the 29th day of September, 2021.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

aks